UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARSHA BINELLI,

    Plaintiff,

v.

    Case No. 09-10385
    Hon. Lawrence P. Zatkoff

CHARTER TOWNSHIP OF FLINT and
KARYN MILLER,

    Defendants.
    _____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on September 30, 2010

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

This matter is before the Court on Defendants' motion for summary judgment [dkt 13]. The parties have fully briefed the motion. The Court finds that the facts and legal arguments are adequately presented in the parties' papers such that the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. Mich. L.R. 7.1(f)(2), it is hereby ORDERED that the motion be resolved on the briefs submitted. For the following reasons, Defendants' motion [dkt 13] is GRANTED.

**II. BACKGROUND**

Plaintiff was employed by Defendant Charter Township of Flint ("the Township") as a confidential secretary to then-Township Supervisor Douglas Carlton ("Carlton"). Plaintiff entered this position on May 15, 2006, following Carlton's victory in a special recall election.

Prior to the 2006 election, Carlton was a member of Flint Township's Board of Trustees, having been elected to that position in 2004. Plaintiff was previously employed by Carlton at his private business. In December 2007, Carlton appointed Plaintiff to the position of Deputy Supervisor. Plaintiff represents that the only difference between this position and her confidential secretary position was that the new position authorized her to sign purchase orders.

In an August 2008 primary vote, Defendant Karyn Miller ("Miller") defeated Carlton, which both parties agree was a surprise result. Miller ran unopposed in the November general election, and she assumed office on November 20, 2008.

On September 8, 2008, the Township enacted Ordinance No. 512-02, effective September 21, 2008, which established a means of preventing residential neighborhood blight. *See* Pl.'s Mot. Summ. J. Ex. 13. Following adoption of the ordinance, Carlton selected Plaintiff to fill the newly-created position of ordinance-enforcement officer. To accomplish this, Plaintiff, along the funds earmarked for Plaintiff's 2009 salary ($30,000), were transferred from the Supervisor Department to the Building Department. Plaintiff immediately began performing the duties of ordinance-enforcement officer, although she continued to act in her other capacities as well. She was not officially sworn-in to her new position until November 19, 2008—the day before Miller took over as Township Supervisor.

On December 1, 2008, Miller informed Plaintiff via letter (1) that her position as Deputy Supervisor had concluded on November 20, 2008; and (2) that Miller did not require Plaintiff's services as a confidential secretary.

Plaintiff returned to work the following day, at the behest of the Township's Clerk, Kim Courts, and Treasurer, Sandy Wright, who both believed that Miller had overstepped her

authority in dismissing Plaintiff. Plaintiff continued to work for several days thereafter, until December 17, 2008, when Miller tendered Plaintiff another letter informing Plaintiff that (1) Plaintiff had been transferred from the Building Department back to the City Supervisor Department; and (2) as previously informed, Miller did not require a confidential secretary. Plaintiff has not worked for the Township since December 17, 2008.

### III. LEGAL STANDARD

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Thompson v. Ashe*, 250 F.3d 399, 405 (6th Cir. 2001). The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact, and all inferences should be made in favor of the nonmoving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

To support its motion, the moving party may show "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Although all inferences must be drawn in favor of the nonmoving party, this Court bears no obligation to imagine favorable facts where the nonmoving party has alleged none. The moving party must also set forth facts sufficient to establish its case: "[T]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

# IV. ANALYSIS

## A. Exhaustion/Finality

Defendants first question is whether Plaintiff's complaint is ripe for adjudication because Plaintiff did not exhaust her administrative remedies or receive a final, reviewable decision on her employment status. Defendants insist that Plaintiff was required to present her claims to the Township's personnel committee in writing and obtain a written decision from the committee before filing this lawsuit. Plaintiff admits that she did not follow these procedures, but she disputes that such omission prevents this Court from deciding her claim.

### 1. Exhaustion

In *Patsy v. Board. of Regents of State of Florida.*, 457 U.S. 496 (1982), the United States Supreme Court held that Congress did not include a general exhaustion requirement for actions arising under 42 U.S.C. § 1983.[1] *Patsy* remains good law on this issue. *See Haywood v. Drown*, __ U.S. ___, 129 S. Ct. 2108, 2132 (2009) (Thomas, J., dissenting); *Jones v. Bock*, 549 U.S. 199, 212 (2007); *Wilkinson v. Dotson*, 544 U.S. 74, 79 (2005); *Felder v. Casey*, 487 U.S. 131, 147–48 (1988).

As *Pasty* indicates, § 1983 contains no such requirement. *See*, *also*, *Wal Juice Bar, Inc. v. City of Oak Grove, Ky.*, 211 Fed. Appx. 358, 361 (6th Cir. 2006). Therefore, Plaintiff was not required to exhaust her administrative remedies before filing this action.

---

[1] Congress has required exhaustion of administrative remedies for § 1983 actions under specified circumstances, most notably for lawsuits filed by prisoners. *See Pasty*, 457 U.S. at 508; *see also Booth v. Churner*, 532 U.S. 731 (2001); 42 U.S.C. § 1997e. Defendants point to no similar statutory requirement pertaining to political-patronage claims.

## 2. Finality

Exhaustion and finality are "distinct concepts" but with policies that "often overlap." *Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 192–93 (1985). The concepts differ in that:

> [T]he finality requirement is concerned with whether the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury; the exhaustion requirement generally refers to administrative and judicial procedures by which an injured party may seek review of an adverse decision and obtain a remedy if the decision is found to be unlawful or otherwise inappropriate.

*Id.* at 192–93. The Sixth Circuit has construed *Williamson County* as "articulat[ing] a more specific formulation of ripeness for cases involving the alleged taking of a property interest." *See Insomnia, Inc. v. City of Memphis, Tenn.*, 278 Fed. Appx. 609, 613 (6th Cir. 2008) (denial of land-use application). *See also Bigelow v. Mich. Dep't of Natural Res.*, 970 F.2d 154 (6th Cir. 1992) (fishing rights). The current case does not involve such issues, and Defendants have not demonstrated that the heightened standard applies to First Amendment political-patronage cases.

In cases not involving property interests, ripeness may be established by a showing "(1) that 'the claim . . . arises in a concrete factual context and concerns a dispute that is likely to come to pass' and (2) that 'the hardship to [Plaintiff] of withholding court consideration' outweighs the costs of allowing 'litigation by hypothetical[.]'" *Connection Distrib. Co. v. Holder*, 557 F.3d 321, 343 (6th Cir. 2009) (en banc) (citing *Warshak v. United States*, 532 F.3d 521 (6th Cir. 2008)).

Here, Plaintiff has suffered a real and concrete injury—she was laid off from her employment—rather than a hypothetical or potential injury, and withholding court consideration

would create only further hardship. Accordingly, the Court will entertain the merits of Plaintiff's Complaint.

**B. Township Governance**

Having found the issue ripe for review, the Court finds that a discussion of charter township governance is beneficial to the understanding of this dispute. Michigan law permits a township having 2,000 or more residents to incorporate as a "charter township." Mich. Comp. Laws § 42.1(2). A charter township is to be governed by an elected Board of Trustees. *Id*. § 42.5(1). The seven-member Board is to consist of: (1) the Township Supervisor; (2) the Township Clerk; (3) the Township Treasurer; and (4) four elected Trustees. *Id*. The Board of Trustees is vested with "[a]ll legislative authority and powers." *Id*.

The Township Supervisor—whether in a general or charter township—is an elected official. Mich. Comp. Laws § 41.1b(b). In a charter township, the Board of Trustees may appoint a superintendent and bestow on that position a number of statutorily-listed responsibilities. The description of the township supervisor position in the Township's Policies and Procedures Manual ("the Manual") indicates that its Township Supervisor enjoys all of the statutorily-granted responsibilities for a superintendent, which responsibilities under the statute include "assum[ing] all the duties and responsibilities as personnel director of all township employees or delegat[ing] such duties to some other officer or employee." *See* Mich. Comp. Laws § 42.10(n).

Considering this background, the Court will next address the parties' responses to the additional briefing pertaining to specific issues of township governance.

### 1. Creation of the Ordinance-Enforcement Officer Position

The parties are in agreement that the Board is responsible for the creation of new employment positions. They disagree, however, on whether the Board officially created the ordinance-enforcement position to which Plaintiff was purportedly transferred by Carlton.

Defendants cite the fact that the minutes from the Board's meetings during that time period do not indicate that a motion to establish the ordinance-enforcement officer position was ever made or considered. Defendants also aver that the Board only speaks through its minutes, and that, any evidence to the contrary is parol evidence and is not properly considered.

Plaintiff does not dispute this, but rather contends that the position was created when the Board approved the Township's budget for the 2009 fiscal year at its October 20, 2008, meeting. Plaintiff suggests that the position was approved by the Board because it was budgeted for in the 2009 budget, and the Board adopted that budget. Plaintiff also notes that the proposed budget listed Plaintiff as the person occupying the position.

### 2. Township Supervisor's Authority to Transfer Employees

Another issue of importance is the Township Supervisor's authority to transfer employees, and this power, or lack of power, concerns both Carlton's transfer of Plaintiff from the position of confidential secretary to ordinance-enforcement officer and Miller's transfer of Plaintiff back to a confidential secretary position.

Neither party is able to identify an explicit affirmation or prohibition on the authority of the Township Supervisor to transfer an employee from one position to another. Plaintiff avers that the power to transfer employees falls within the Supervisor's role as "personnel director"

under Mich. Comp. Laws § 42.10(n). Defendant counters that because no specific transfer authority has been granted to the Township Supervisor, that position enjoys no such power.

### 3. Township Supervisor's Authority to Terminate Employees

The parties also addressed the Township Supervisor's authority to terminate employees in their briefing. The parties generally agree that the decision to terminate employees is reserved to the Board. However, Defendants maintain that an exception exists for positions that serve at the pleasure of the Township Supervisor, such as Plaintiff's former position as confidential secretary.

## C. Defendant Miller

### 1. Qualified Immunity

Government officials are shielded from liability under the doctrine of qualified immunity "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Pierson v. Ray*, 386 U.S. 547 (1967). In order to determine whether a defendant is entitled to qualified immunity, the Court performs a two-step analysis. First, the Court must question whether the alleged facts "[t]aken in the light most favorable to the party asserting the injury . . . show [that] the officer's conduct violated a constitutional right[.]" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Second, the Court must decide "whether the right was clearly established." *Id*. To determine that a right is clearly established, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The burden of proof is on the plaintiff to show that the defendant is not entitled to qualified immunity. *See Miller v. Admin.*

*Office of Courts*, 448 F.3d 887, 894 (6th Cir. 2006). It is within the Court's discretion to determine which factor of the analysis to address first. *See Pearson v. Callahan*, 555 U.S. ___, 129 S. Ct. 808, 821 (2009). In this case, the Court will first determine whether the right was clearly established.

### a. Clearly Established Law

To overcome an assertion of qualified immunity, Plaintiff must demonstrate that the constitutional right at issue was clearly established at the time of the alleged deprivation. *See, e.g.*, *Saucier*, 533 U.S. at 201. In *Anderson v. Creighton*, the Supreme Court clarified:

> [T]hat the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that *in the light of pre-existing law the unlawfulness must be apparent*.

483 U.S. at 640 (citation omitted)(emphasis added). Thus, while it must be clear to the reasonable official that such acts would violate the Constitution, it is irrelevant what the individual official actually believed about the legality of his or her action. *Harlow v. Fitzgerald*, 457 U.S. 800, 818-19 (1982); *Barton v. Norrod*, 106 F.3d 1289, 93 (6th Cir. 1997) ("[W]hether an official is entitled to qualified immunity focuses on the objective reasonableness of the official's action."); *Humphrey v. Mabry*, 482 F.3d 840, 847 (6th Cir. 2007) ("A right is 'clearly established' for qualified immunity purposes if 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'") (citing *Saucier*, 533 U.S. at 202).

Therefore, the inquiry is whether a reasonable official would have understood that transferring Plaintiff from the position of ordinance-enforcement officer to the confidential secretary position would violate Plaintiff's constitutional rights.

Plaintiff contends that the right was clearly established with Supreme Court and Sixth Circuit precedent. The authority that Plaintiff relies on, however, frames the specific context of the employee's termination as one where the political affiliation (Democrat or Republican) was the primary factor for termination. *See Back*, 537 F.3d at 557 (holding that defendant was not entitled to qualified immunity because it was clearly established that an employee who performs functions with no discretion is entitled to First Amendment protection); *Rutan*, 497 U.S. at 76 (holding plaintiff's First Amendment rights were violated when his employment application was set aside because he did not support the Republican Party). Plaintiff has not shown and the Court does not find that this case has a similar factual context to Plaintiff's cited authority. *See Saucier*, 533 U.S. at 201-02. (The inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition").

The Court finds, in light of pre-existing law, it would not be clear to a reasonable official in Miller's position that her transfer of Plaintiff back to the Supervisor Department from the Building Department would violate Plaintiff's constitutional rights. The Manual provides that the Township Supervisor enjoys all of the statutorily-granted responsibilities under Michigan law. Mich. Comp. Laws § 42.10(n), which specifies the duties and functions that can be delegated by the township board to the Township Supervisor, provides the person in that role is "[t]o assume all the duties and responsibilities as *personnel director of all township employees*. .

. .." M.C.L. 42.10(n) (emphasis added). Thus, the Township Supervisor enjoys control over *all* township employees when acting as a *personnel director.*

In addition, a reasonable official would have logically understood that, since the prior Township Supervisor had the power to transfer Plaintiff from the confidential secretary position to the ordinance-enforcement officer position, the new Township Supervisor would have the power to do the reverse. The fact that Plaintiff represents that her initial transfer by Carlton from confidential secretary to ordinance-enforcement officer was within the Township Supervisor's power as a personnel director only underscores that a reasonable official in Miller's position would not understand that transferring Plaintiff back to the Supervisor Department was impermissible.

Accordingly, for the foregoing reasons, the Court concludes that Plaintiff has failed to show she had a clearly established constitutional right not to be transferred from her ordinance-enforcement officer position back to her confidential secretary position. *See Barrett v. Steubenville City Sch.*, 388 F.3d 967, 970 (6th Cir. 2004) (indicating the plaintiff bears the burden to show the right is clearly established). Thus, even if Plaintiff had a constitutional right not to be transferred back to the Supervisor Department, the Court finds that it was a right that a reasonable official in Miller's position would not have believed violated Plaintiff's constitutional right. *See Pray v. Sandusky*, 49 F.3d 1154, 1158 (6th Cir. 1995) (quoting *Anderson*, 483 U.S. at 640).

Therefore, the Court finds that Miller is entitled to qualified immunity for her actions.[2]

---

[2] Having found that the right is not clearly established, the Court does not need to proceed in its *Saucier* analysis to step two and decide whether there was a constitutional violation. *Pearson*, 129 S.Ct. at 818 ("[T]he district courts and the court of appeals should be permitted to

**D. Municipal Liability**

A municipality can be liable for constitutional violations under § 1983 pursuant to a policy, custom, or widespread practice connected to the municipality. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 692 (1978); *Alkire v. Irving,* 330 F.3d 802, 810-11 (6th Cir. 2003); *O'Brien v. City of Grand Rapids,* 23 F.3d 990, 1004 (6th Cir. 1994)*; City of St. Louis v. Praprotink*, 485 U.S. 112, 127 (1988) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–68 (1970) (a municipality may be subject to liability if the plaintiff can show "the existence of a widespread practice that . . . is 'so permanent and well settled as to constitute a custom or usage with the force of law.'")). Here, Plaintiff has not identified a policy, custom, or widespread practice implicating the Township's employment practices such that liability could exist pursuant to *Monell* or its progeny.

However, "[i]n appropriate circumstances, a single act may rise to the level of policy or custom. With regard to policy, a single act can constitute municipal policy 'where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered.'" *Pusey v. City of Youngstown*, 11 F.3d 652, 659 (6th Cir. 1993) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986)). "'Official policy' often refers to formal rules or understandings—often but not always committed to writing—that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time." *Pembaur*, 475 U.S. at 480-81. Before liability of the municipality can attach, a plaintiff

---

exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first.").

also must demonstrate a "causal link between the municipal action and the deprivation of federal rights." *Bd. of County Comm'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 405 (1997).

Here, even if the Township Supervisor is the final decision-maker with respect to personnel matters, it does not necessarily follow that the Township Supervisor possesses final authority to establish municipal *policy* with respect to personnel matters. *See Cope v. Heltsley*, No. 98-5253, 1999 U.S. App. LEXIS 7829, at *3-4 (6th Cir. April 16, 1999) (stating that while "Ms. Heltsley was unquestionably the final decisionmaker with respect to hiring matters . . . [i]t does not necessarily follow, however, that Ms. Heltsley possessed final authority to establish *county* policy with respect to hiring matters"). *See also Pembaur*, 475 U.S. at 483 n. 12 ("[T]he County Sheriff may have discretion to hire and fire employees without also being the county official responsible for establishing county employment policy."). This is especially true where, as in this case, there is no evidence that (1) the Township Supervisor is responsible for establishing municipal policy, (2) the Township Supervisor in fact established a municipal employment policy when transferring or terminating Plaintiff, or (3) a preexisting municipal policy precluded the Township Supervisor's actions. *See Cope v. Heltsley*, 1999 U.S. App. LEXIS 7829, at *4-5 (finding no municipal liability where there was no evidence that (1) the defendant was responsible for establishing county employment policy, (2) the defendant established any employment policy, or (3) that a preexisting policy precluded the defendant's actions). Under these circumstances, the Court finds that the Township Supervisor's actions respecting Plaintiff do not rise to the level of policy or custom such that municipal liability exists.

## V. CONCLUSION

Accordingly, and for the above reasons, it is HEREBY ORDERED that Defendants' motion for summary judgment [dkt 13] is GRANTED. The claims against Defendants are DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

                                               S/Lawrence P. Zatkoff
                                               LAWRENCE P. ZATKOFF
                                               UNITED STATES DISTRICT JUDGE

Dated: September 30, 2010

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on September 30, 2010.

                                               S/Marie E. Verlinde
                                               Case Manager
                                               (810) 984-3290